IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF WEST VIRGINIA
MARTINSBURG

WALLACE E. SMALLWOOD, JR. and
LINDA F. SMALLWOOD,

        Plaintiffs,

v.                                        Civil Action No. 3:11-CV-87
                                                      (BAILEY)

SOVEREIGN BANK, F.S.B.,[1]

        Defendant.

## ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS

Pending before this Court is the defendant's Motion to Dismiss [Doc. 5], filed October 28, 2011, and redirected toward the plaintiffs' First Amended Complaint [Doc. 9] on November 23, 2011 [Doc. 15]. The motion is now ripe for decision. This Court has reviewed the record and the motion and, for the reasons set out below, finds that the defendant's motion should be **GRANTED IN PART** and **DENIED IN PART**.

## BACKGROUND

### I. Factual Allegations

Plaintiffs Wallace and Linda Smallwood allege the following facts in the challenged First Amended Complaint [Doc. 9]. On February 16, 1995, the plaintiffs executed a note with York Federal Savings and Loan Association ("York Federal") for a $223,200 adjustable

---

[1] As indicated in this caption, this Court has taken judicial notice that the defendant is a federal savings bank.

1

rate mortgage loan to purchase their residence in Shepherdstown, West Virginia. (Id. at ¶¶ 9-10). The note was secured by a deed of trust executed the same day. (Id. at ¶ 11). York Federal is now known as Sovereign Bank, F.S.B. (Id. at ¶ 12).

By letter dated June 10, 2010, Sovereign Bank informed the plaintiffs that their loan was delinquent. (Id. at ¶ 13). In response, the plaintiffs contacted Sovereign bank and disputed this claimed delinquency. (Id. at ¶ 14).

By letter dated June 30, 2010, Sovereign Bank again claimed a delinquency. (Id. at ¶ 15). The plaintiffs responded to this second letter by supplying the bank with documents showing that they were current on their payments. (Id. at ¶ 16). Thereafter, the plaintiffs continued to make monthly payments, while Sovereign Bank continued to insist that they were delinquent. (Id. at ¶¶ 17-18). In the meantime, Mr. Smallwood suffered physical setbacks which required several surgeries. (Id. at ¶ 19).

In October 2010, Ms. Smallwood contacted Sovereign Bank and inquired about a loan modification. (Id. at ¶ 20). A bank representative promised to send Ms. Smallwood a loan modification application package. (Id. at ¶ 21). The same representative told Ms. Smallwood that Sovereign Bank would not accept loan payments from the plaintiffs during the pendency of the application. (Id. at ¶ 22). In reliance upon these representations, the plaintiffs made no payments on their loan after September 1, 2010. (Id. at ¶ 23).

When Sovereign Bank failed to promptly send the promised application package, the plaintiffs contacted the bank several times. (Id. at ¶¶ 24-25). Eventually, Sovereign Bank sent the application package by cover letter dated December 7, 2010. (Id. at ¶ 26). Two days after receiving the application package, however, the plaintiffs received a notice signed on December 14, 2010, from Amos & Golden, PLLC ("A&G"), on behalf of Sovereign

Bank, which informed the plaintiffs that their home would be sold at foreclosure on January 11, 2011. (Id. at ¶¶ 27-28). The plaintiffs nevertheless completed the modification application and submitted it and the required documentation in January 2011. (Id. at ¶ 29). The January 11, 2011, foreclosure sale was postponed. (Id. at ¶ 30).

From January to March 2011, the plaintiffs made frequent and repeated phone calls to Sovereign Bank in an effort to obtain a loan modification. (Id. at ¶ 31). During these phone conversations, the plaintiffs received conflicting information. (Id. at ¶ 32). Bank representatives made repeated requests for the same information, while assuring the plaintiffs that they should have no trouble obtaining a loan modification. (Id. at ¶¶ 33-34). Bank representatives also told the plaintiffs that, even if a modification was denied, the bank would set up a payment plan which would allow them to bring their loan current. (Id. at ¶ 35).

By letter dated April 4, 2011, Sovereign Bank informed the plaintiffs that their modification request had been denied because they had not provided the documentation requested. (Id. at ¶ 36). In response, Ms. Smallwood called the bank and explained that she had sent all the documentation that had been requested by either facsimile or certified mail. (Id. at ¶ 37). The bank representative replied that the denial had been in error and suggested that the plaintiffs resubmit their application. (Id. at ¶ 38). The plaintiffs complied, submitting a second application on May 7, 2011. (Id. at ¶ 39). In the weeks following May 7, 2011, Ms. Smallwood made several calls to Sovereign Bank to check on the status of the plaintiffs' second application. (Id. at ¶ 40). During those calls, Ms. Smallwood again received conflicting or erroneous information. (Id. at ¶ 41).

In early June 2011, the plaintiffs received a letter signed June 6, 2011, sent from A&G, on behalf of Sovereign Bank. (Id. at ¶¶ 42-43). In this second letter, the plaintiffs were informed that their home would be sold at foreclosure on June 28, 2011. (Id. at ¶ 44). According to the plaintiffs, this letter incorrectly stated that they were 11 months behind on their mortgage payments. (Id. at ¶ 45). In response, Ms. Smallwood provided information to Sovereign Bank showing that its delinquency assertions were inaccurate. (Id. at ¶ 46). The bank agreed to postpone the June 28, 2011, foreclosure sale. (Id. at ¶ 47).

By letter dated July 15, 2011, Sovereign Bank notified the plaintiffs that their request for a modification had been denied because "Property value exceeds mortgage debt." (Id. at ¶ 48). This was the stated basis though the value of the plaintiffs' property had been in excess of the amount of the loan since the beginning of the modification process and Sovereign Bank was aware of this fact. (Id. at ¶¶ 49-50). In response, Ms. Smallwood called the bank to inquire about the repayment plan she had been promised in the event of a denial of her modification application, a plan which Sovereign Bank has still yet to provide. (Id. at ¶¶ 51-52).

By letter dated July 27, 2011, A&G notified the plaintiffs on behalf of Sovereign Bank that their home would be sold at foreclosure on August 9, 2011. (Id. at ¶¶ 53-54). On August 4, 2011, the plaintiffs' counsel wrote Sovereign Bank requesting, among other things, a review of the plaintiffs' loan account and modification application. (Id. at ¶ 55). Sovereign Bank received this letter on August 8, 2011. (Id. at ¶ 57). A&G agreed to postpone the foreclosure sale until September 20, 2011, in order to provide time to attempt a resolution of the plaintiffs' dispute with Sovereign Bank. (Id. at ¶ 58).

As of September 15, 2011, Sovereign Bank had not responded to the plaintiffs' August 4, 2011, letter. (Id. at ¶ 59). However, A&G has agreed to postpone the foreclosure sale. (Id. at ¶ 60).

## II.   Procedural History

On September 15, 2011, the plaintiffs filed suit against Sovereign Bank in the Circuit Court of Jefferson County, West Virginia. The original Complaint [Doc. 3-1] contained six causes of action: (1) breach of contract; (2) unfair and deceptive trade practices in violation of the West Virginia Consumer Credit and Protection Act ("WVCCPA"), W.Va. Code § 46A-1-1, *et seq.*; (3) intentional misrepresentation; (4) unfair debt collection in violation of the WVCCPA (5) breach of implied covenant of good faith and fair dealing; (5) and (6) violation of the Real Estate Settlement Practices Act ("RESPA"), 12 U.S.C. § 2601, *et seq.*

On October 20, 2011, Sovereign Bank removed the above-styled action to the United States District Court for the Northern District of West Virginia basing jurisdiction upon complete diversity [Doc. 1]. A week later, on October 28, 2011, Sovereign Bank filed the instant Motion to Dismiss the original Complaint [Doc. 5], arguing that the plaintiffs had failed to state a claim upon which relief can be granted. Sovereign Bank attached a declaration provided by the bank's assistant vice president [Doc. 6-1], stating that Sovereign Bank is a federal savings bank and that its lending activities are regulated by the Office of Thrift Supervision ("OTS").

On November 13, 2011, the plaintiffs filed the challenged First Amended Complaint [Doc. 9], which simply split their breach of implied covenant of good faith and fair dealing cause of action into one based upon the modification agreement or the agreement to enter into a repayment plan and another based upon the deed of trust, leaving their other claims

substantially unchanged. On November 14, 2011, the plaintiffs filed their Response in opposition to Sovereign Bank's Motion to Dismiss [Doc. 10], arguing that they have stated claims which should survive a 12(b)(6) challenge. The plaintiffs attached two letters from the OTS [Doc. 10-1 & 10-2].

On November 21, 2011, Sovereign Bank filed its Reply [Doc. 13], reasserting its previous arguments in support of dismissal. On November 23, 2011, Sovereign Bank redirected its Motion to Dismiss toward the plaintiffs' First Amended Complaint and incorporated its previous arguments in support of dismissal [Doc. 15]. The same day, the plaintiffs incorporated their previous arguments in opposition to dismissal of their First Amended Complaint [Doc. 17].

## DISCUSSION

I.  **Applicable Standards**

   A.  **Motion to Dismiss**

A 12(b)(6) motion must be treated as a motion for summary judgment under Federal Rule of Civil Procedure 56(c) where "matters outside the pleadings are presented to and not excluded by the court." Fed. R. Civ. P. 12(d). In this regard, a court ruling on a motion to dismiss may consider any documents integral to and relied on in the complaint– regardless of whether those documents are actually attached to the complaint. *See* ***Am. Chiropractic Ass'n v. Trigon Healthcare, Inc.***, 367 F.3d 212, 234 (4th Cir. 2004).

Here, in addition to the First Amended Complaint, the parties have presented to the Court the following exhibits: (1) the declaration of Sovereign Bank's assistant vice president [Doc. 6-1]; (2) an OTS letter dated March 20, 1999 [Doc. 10-1]; and (3) an OTS letter dated December 24, 1996 [Doc. 10-2]. However, this Court has elected not to

consider these exhibits in rendering its decision below. As such, a summary judgment standard is inapplicable to Sovereign Bank's motion. See Fed. R. Civ. P. 12(d).

In assessing a Rule 12(b)(6) motion for failure to state a claim, the court must accept the factual allegations contained in the complaint as true. ***Advanced Health-Care Servs., Inc. v. Radford Cmty. Hosp.***, 910 F.2d 139, 143 (4th Cir. 1990). A complaint must be dismissed if it does not allege "enough facts to state a claim to relief that is *plausible* on its face." ***Bell Atl. Corp. v. Twombly***, 550 U.S. 544, 570 (2007) (emphasis added).

"A complaint need only give 'a short and plain statement of the claim showing that the pleader is entitled to relief.'" ***In re Mills***, 287 Fed.Appx. 273, 280 (4th Cir. 2008) (quoting Fed. R. Civ. P. 8(a)(2)). "Specific facts are not necessary; the statement need only give the defendant fair notice of what the ... claim is and the grounds upon which it rests." ***Id.*** (internal quotations and citations omitted). "[T]he pleading standard Rule 8 announces does not require detailed factual allegations, but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation. A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do. Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancements." ***Ashcroft v. Iqbal***, 556 U.S. 662, 883-884 (2009).

### B.  Home Owners Loan Act Preemption

The Home Owners Loan Act ("HOLA"), 12 U.S.C. § 1464, *et seq.*, empowers the OTS "to authorize the creation of federal savings and loan associations, to regulate them, and by its regulations to preempt conflicting state law." ***In re Ocwen Loan Servicing, LLC Mortg. Servicing Litigation***, 491 F.3d 638, 642 (7th Cir. 2007); *see* 12 U.S.C. § 1464. Under this authority, OTS promulgated a preemption regulation in 12 C.F.R. § 560.2 (the

"OTS Regulation"), which is entitled to "no less pre-emptive effect than federal statutes."

***Fidelity Fed. Sav. and Loan Ass'n v. de las Cuesta***, 458 U.S. 141, 153 (1982). The OTS Regulation provides that:

> OTS hereby occupies the entire field of lending regulation for federal savings associations. OTS intends to give federal savings associations maximum flexibility to exercise their lending powers in accordance with a uniform federal scheme of regulation. Accordingly, federal savings associations may extend credit as authorized under federal law, including this part, *without regard to state laws purporting to regulate or otherwise affect their credit activities, except to the extent provided in paragraph (c) of this section* . . ..

12 C.F.R. § 560.2(a) (emphasis added).

In § 560.2(b), the OTS provided illustrative examples of the types of state laws preempted. Among these listed examples, preempted state laws "include, without limitation, state laws purporting to impose requirements regarding":

> (4) The terms of credit, including amortization of loans and the deferral and capitalization of interest and adjustments to the interest rate, balance, payments due, or term to maturity of the loan, including the circumstances under which a loan may be called due and payable upon the passage of time or a specified event external to the loan;
>
> . . .
>
> (10) Processing, origination, servicing, sale or purchase of, or investment or participation in, mortgages;
>
> . . .

12 C.F.R. § 560.2(b)(4) and (10).

Moreover, the OTS expressly provided, in § 560.2(c), categories of state laws that "are not preempted to the extent that they only incidentally affect the lending operations of Federal savings associations or are otherwise consistent with the purposes of paragraph (a) . . .." 12 C.F.R. § 560.2(c).

"The Fourth Circuit has yet to address the scope of preemption under HOLA." ***McFadden v. Fannie Mae***, 2012 WL 37169, *3 (W.D. Va. Jan. 9, 2012) (Turk). District courts in this Circuit, however, have consistently applied the following two-part test in evaluating HOLA preemption. "First, the Court determines if the law is of the nature covered in § 560.2(b). If the law is of that nature, the law is preempted. If it s not of that nature, the Court asks whether the law affects lending. If the law affects lending, under paragraph (a), preemption is presumed. Reversal only occurs if the law is contained with paragraph (c). The Circuit interprets paragraph (c) narrowly and in favor of preemption." ***Adams v. Samuel I. White, P.C.***, 2011 WL 3875422, *5 (E.D. Va. Aug. 31, 2011) (Lee) (citing ***Down v. Flagstar Bank, F.S.B.***, 2011 WL 1326961, *3 (E.D. Va. Apr. 4, 2011) (O' Grady) (footnote omitted). Under this narrow approach, state law claims are only saved from HOLA preemption if their supporting allegations are not "inextricably linked to the loan transaction . . .." ***McFadden***, 2012 WL 37169, at *3 (internal quotation and citation omitted).

II. <u>Analysis</u>

    A.    **Breach of Contract (Count I)**

In Count I, the plaintiffs claim that Sovereign Bank breached a contract the parties had to modify their loan or enter into a repayment plan. (See [Doc. 9] at ¶¶ 61-65). The Court will consider each alleged contract in turn.

In so doing, this Court will analyze whether the plaintiffs have alleged facts adequate to support each of the elements of a breach of contract claim, i.e., that (1) a contract exists between the parties; (2) the defendant failed to comply with a term in the contract; and (3) damage arose from the breach. See ***Wince v. Easterbrooke Cellular, Corp.***, 681 F.Supp.2d 688, 693 (N.D. W.Va. 2010). This Court will also determine whether the

plaintiffs have pled an exception to the statute of frauds, such as part performance. *See* ***Messer v. Runion***, 210 W.Va. 102, 105, 556 S.E.2d 69, 72 (2001). (recognizing part performance as an exception to the statute of frauds).

### 1. Loan Modification

The plaintiffs first claim in Count I that Sovereign Bank breached an agreement to modify the their loan. In support of this claim, the plaintiffs state as follows.

As of October 2010, the plaintiffs were current on, but struggling to make, their loan payments. (See [Doc. 9] at ¶¶ 13-19). As a result, Ms. Smallwood contacted Sovereign Bank to inquire about a loan modification. (Id. at ¶ 20). After receiving an application from Sovereign Bank, the plaintiffs completed and submitted the same in January 2011. (Id. at ¶¶ 26, 29). During the next few months, the plaintiffs were told that "they should have no trouble getting a modification." (Id. at ¶ 34). However, by letter dated April 4, 2011, Sovereign Bank informed the plaintiffs that their application had been denied because they had not provided the supporting documentation requested. (Id. at ¶ 36). Upon receipt of this letter, Ms. Smallwood contacted Sovereign Bank and was told that the denial was in error and that the plaintiffs should reapply for a modification. (Id. at ¶¶ 37-38). On May 7, 2011, the plaintiffs submitted a second application. (Id. at ¶ 39). By letter dated July 15, 2011, Sovereign Bank notified the plaintiffs that their second application had been denied because "Property value exceeds mortgage debt." (Id. at ¶ 48).

On these allegations, this Court concludes that the plaintiffs have failed to allege that a loan modification agreement existed between them and Sovereign Bank, the first element of a breach of contract claim. *See* ***Wince***, 681 F.Supp.2d at 693. On this point, the plaintiffs allege only that a Sovereign Bank representative told them that "they should have

no trouble getting a modification." ([Doc. 9] at ¶ 34). This is hardly a promise obligating Sovereign Bank to grant a loan modification.

Even assuming an oral contract was formed on this representation, this Court concludes that the plaintiffs have failed to plead the part performance exception to the statute of frauds. As a general proposition, this Court has allowed a debtor to proceed on a breach of contract claim based upon an oral modification agreement only when the debtor alleges that he or she made a number of payments at the modified amount, as instructed. *See, e.g.,* **Wittenberg v. First Independent Mortg. Co.**, 2011 WL 1357483, *20 (N.D. W.Va. Apr. 11, 2011). Here, however, the plaintiffs actually allege that they were twice denied a loan modification and at no time made a payment at a modified amount.

For these reasons, this Court concludes that the plaintiffs have failed to state a breach of contract claim based upon an oral modification agreement that can survive a 12(b)(6) motion. Accordingly, Count I (Breach of Contract) is hereby **DISMISSED** to the extent that it relies upon an alleged oral modification agreement.

### 2. Repayment Plan

Apparently recognizing the inadequacy of their loan modification claim, the plaintiffs devote most of their briefing efforts to their other claim in Count I, i.e., that Sovereign Bank breached an agreement to enter into a repayment plan with the plaintiffs:

> Defendant promised it would provide the repayment plan in the event that plaintiffs' modification request were [sic] denied. Defendant instructed the plaintiffs that it would not accept payments while the modification request was pending. The [plaintiffs] accepted the offer of a repayment plan by applying for modification and suspending payments as directed. Defendant then breached the agreement by refusing to provide the repayment plan and

instead seeking foreclosure.

([Doc. 10] at 3). To the extent that this passage inaccurately represents the sequence of events, as alleged in the First Amended Complaint, this Court finds it necessary to outline those allegations below.

Current but struggling to make payments, Ms. Smallwood called Sovereign Bank in October 2010 to inquire about a loan modification. ([Doc. 9] at ¶¶ 14-20). At that time, she was told that the bank would not accept loan payments during the pendency of an application for a loan modification. (Id. at ¶ 22). In reliance upon this representation, the plaintiffs made no more payments after September 1, 2010, and applied for a modification in January 2011. (Id. at ¶¶ 23, 29). Between January and March 2011, while the plaintiffs' first application was pending, agents of Sovereign Bank "promised [them] that, even if a modification was denied, [the bank] would set up a payment plan so [they] could bring their mortgage current." (Id. at ¶ 35). In April 2011, Sovereign Bank denied the plaintiffs' first application. (Id. at ¶ 36). In May 2011, the plaintiffs submitted a second application, which was also denied in July 2011. (Id. at ¶¶ 39, 48). After the second denial, Ms. Smallwood contacted Sovereign Bank to "inquire about the repayment plan she had been promised in the event of a denial of her modification application." (Id. at ¶ 51). As of the filing of the First Amended Complaint, Sovereign Bank has not provided the plaintiffs with "the promised repayment plan." (Id. at ¶ 52). Instead, Sovereign Bank has sought foreclosure. (Id. at ¶¶ 53-60).

According to the First Amended Complaint, therefore, Sovereign Bank first offered a repayment plan *after* the plaintiffs suspended payments and submitted an application for

a loan modification. This allegation, properly characterized, is significant for at least two reasons.

First, the plaintiffs argue in their brief that they "accepted the offer of a repayment plan by applying for modification and suspending payments as directed." ([Doc. 10] at 3). However, this Court is at a loss to understand how the plaintiffs accepted an offer that, by their own allegations, had not yet been made. Thus, this Court questions whether the plaintiffs have adequately alleged that a contract to enter a repayment plan existed, the first element of a breach of contract claim. See **Wince**, 681 F.Supp.2d at 693.

Second, even assuming the existence of such a contract, this Court concludes that the plaintiffs have failed to plead the part performance exception to the statute of frauds. Specifically, this Court is unable to discern how the plaintiffs' argument for application of the part performance exception can be based upon actions taken *before* the extension of an offer.

For these reasons, this Court concludes that the plaintiffs have failed to state a claim for breach of an oral agreement to enter a repayment plan that can survive a 12(b)(6) motion. Accordingly, Count I (Breach of Contract) is hereby **DISMISSED** to the extent that it is based upon an alleged oral agreement to enter a repayment plan.

### B. Breach of Implied Covenant of Good Faith and Fair Dealing

In Counts V and VII, the plaintiffs claim that Sovereign Bank breached the covenant of good faith and fair dealing implied in the oral modification agreement, the oral agreement to enter into a repayment plan, and the deed of trust. Before specifically addressing these claims, however, this Court finds it appropriate to identify a few important principles.

First, West Virginia does not recognize a stand-alone cause of action for failure to

exercise contractual discretion in good faith. See **Corder v. Countrywide Home Loans, Inc.**, 2011 WL 289343, *4 (S.D. W.Va. Jan 26, 2011) (Copenhaver). Second, a claim for breach of the implied covenant of good faith and fair dealing can only survive if the borrower pleads an express breach of contract claim. See e.g., **Clendenin v. Wells Fargo Bank, N.A.**, 2009 WL 4263506, *5 (S.D. W.Va. Nov. 24, 2009) (Goodwin) (holding that the bad faith claim "will live or die by the [express] breach-of-contract claim . . .."). Third, the requisite express breach of contract claim can be based upon a provision in the deed of trust, as in **Koontz v. Wells Fargo, N.A.**, 2011 WL 1297519 (S.D. W.Va. Mar. 31, 2011) (Johnston) or **Mullins v. GMAC Mortg., LLC**, 2011 WL 1298777 (S.D. W.Va. Mar. 31, 2011) (Faber), or upon a new contract to modify, like in **Warden v. PHH Mortg. Corp.**, 2010 WL 3720128 (N.D. W.Va. Sept. 16, 2010) (Bailey).

Below, this Court will apply these principles to the plaintiffs' two claims for breach of the implied covenant of good faith and fair dealing.

### 1. Modification Agreement/Repayment Plan (Count V)

In Count V, the plaintiffs claim that Sovereign Bank breached the covenant of good faith and fair dealing implied in the modification agreement and the agreement to enter into a repayment plan, which are the subject of the breach of contract claims in Count I. Specifically, the plaintiffs allege that Sovereign Bank breached a duty to deal with them fairly and in good faith with respect to their modification agreement and repayment plan. ([Doc. 9] at ¶¶ 89-91).

Applying the above principles to this claim, this Court concludes that the plaintiff have failed to state a claim as a matter of law. In particular, because this Court has dismissed the plaintiffs' express breach of contract claims concerning these alleged

agreements, this claim stands alone and must also be dismissed.  See **Corder**, 2011 WL 289343, at *4.  Accordingly, Count V (Breach of Implied Covenant of Good Faith and Fair Dealing – Modification Agreement/Repayment Plan) is hereby **DISMISSED**.

### 2. Deed of Trust (Count VII)

In Count VII, the plaintiffs claim that Sovereign Bank breached the implied covenant of good faith and fair dealing implied in the deed of trust.  Specifically, the plaintiffs allege that Sovereign Bank represented in bad faith that it would not accept payments during the pendency of the plaintiffs' application for a loan modification, a representation upon which the plaintiffs justifiably relied to their detriment.  ([Doc. 8] at ¶¶ 104-116).

Applying the above principles to this claim, this Court concludes that the plaintiffs have failed to state a claim as a matter of law.  In particular, the plaintiffs have failed to plead an express breach of a provision in the deed of trust relating to a loan modification.  As such, this constitutes a stand-alone bad faith claim which is not recognized in West Virginia.  See **Corder**, 2011 WL 289343, at *4. Accordingly, Count VII (Breach of Good Faith and Fair Dealing – Deed of Trust) is hereby **DISMISSED**.

### C. Fraud (Count III)[2]/ Unfair and Deceptive Trade Practices (Count II)

In Count II, the plaintiffs claim that Sovereign Bank perpetrated a fraud against them in connection with their loan modification.  In support of this claim, the plaintiffs allege as

---

[2]The Court notes that the plaintiffs actually title Count II as "Intentional Misrepresentation." However, in West Virginia, "actual fraud . . . consists of an intentional deception or misrepresentation to 'induce another to part with property or to surrender some legal right, and which accomplishes the end designed.'" **Gerver v. Benavides**, 207 W.Va. 228, 232, 530 S.E.2d 701, 705 (1999) (quoting **Stanley v. Sewell Coal Co.**, 169 W.Va. 72, 76, 285 S.E.2d 2d 679, 683 (1981)).  Thus, any claim of intentional misrepresentation more accurately constitutes a claim of fraud.

follows: (1) Sovereign Bank represented that it would not accept payments during the pendency of the plaintiffs' application for a loan modification; (2) Sovereign Bank falsely represented that the plaintiffs would have no trouble obtaining a loan modification, even though the bank knew that the value of the plaintiffs' home exceeded the mortgage loan amount; and (3) the plaintiffs reasonably relied upon these representations and are now being threatened with foreclosure. ([Doc. 9] at ¶¶ 73-79). The plaintiffs claim in Count II that these allegations also constitute unfair and deceptive trade practices prohibited by § 46A-6-104 of the WVCCPA. (Id. at ¶¶ 66-72).

In its motion, Sovereign Bank argues that these claims are preempted by the HOLA and the OTS Regulation. For the reasons that follow, this Court agrees.

As indicated above, in considering whether these claims are preempted by the HOLA, this Court will first determine whether a claim is of the nature covered in § 560.2(b). If so, the claims are preempted. Alternatively, this Court will determine whether either claim fits within the permissible state law claims laid out in § 560.2(c), by analyzing whether each claim has, at most, only an incidental effect on lending. A claim will be held to have only an incidental effect if found not to be inextricably linked to the loan transaction. *See* ***McFadden***, 2012 WL 37169, at \*3; ***Adams***, 2011 WL 3875422, at \*5; ***Down***, 2011 WL 1326961, at \*3.

The common complaint in Counts II and III is that Sovereign Bank allegedly failed to properly consider the plaintiffs for a loan modification. As such, "[t]he Court begins by observing that, by its very nature, obtaining a loan modification involves 'processing, origination, [and] servicing . . . of . . . mortgages.' 12 C.F.R. § 560.2(b)(10), as a modification requires processing and the resulting mortgage requires servicing.

16

Furthermore, state laws are preempted if they purport to regulate 'terms of credit and capitalization of loans and the deferral and capitalization of interest and adjustments to the interest rate, balance, payments due, or term to maturity of the loan.' 12 C.F.R. § 560.2(b)(4). Because a loan modification by definition results in new loan terms, a request for a loan modification clearly relates to 'terms of credit' and is expressly preempted." **McFadden**, 2012 WL 37169, at *4. Accordingly, because the substance of Counts II and III concern activities expressly preempted by § 560.2(b), those claims must be dismissed on that basis alone.[3]

In addition, this Court is unpersuaded by the plaintiffs' attempt to avoid the application of § 560.2(b) by arguing that Counts II and III constitute tort claims saved from preemption under § 560.2(c)(4). Again, state laws that only "incidentally affect lending operations" are not preempted by § 560.2(c). The gravamen of Counts II and III is that Sovereign Bank told the plaintiffs it would not accept payments during the pendency of their application for a loan modification. To this extent, the plaintiffs clearly seek to regulate the manner in which loan modifications are considered, which contradicts the purpose of HOLA, as explained by the OTS. See § 560.2(a) ("OTS intends to give federal savings associations maximum flexibility to exercise their lending powers in accordance with a uniform federal scheme of regulation."). Moreover, the alleged fraud is inextricably linked to the manner in which Sovereign Bank elected to consider the plaintiffs for a loan modification. As such, § 560.2(c)(4) is inapplicable.

---

[3]In this regard, this Court notes that it is required to look to the substance of the claims to determine whether they are preempted. See **Pinney v. Nokia, Inc.**, 402 F.3d 430, 441 (4th Cir. 2005).

For these reasons, this Court concludes that the plaintiffs' claims of fraud and unfair and deceptive trade practices are preempted by HOLA and the OTS regulation. Accordingly, Count II (Unfair and Deceptive Trade Practices) and Count III (Fraud) are hereby **DISMISSED**.

### E. Unfair Debt Collection

In Count IV, the plaintiffs claim that "[e]ach of the deficiency statements sent by [Sovereign Bank] to [them] is a false representation or implication of the character, extent or amount of a claim against each [of them], in violation of W.Va. Code § 46A-2-127(d)." ([Doc. 9] at ¶ 86). The plaintiffs allege that they were current on their loan until Sovereign Bank informed them in October 2010 that the bank would not accept payments during the pendency of their application for a loan modification. The plaintiffs made no payments in October 2010 or thereafter. Two of the five deficiency statements referenced were allegedly sent in June 2010. Another was allegedly sent in December 2010 and two more in June 2011. In its motion, Sovereign Bank argues that this claim is preempted by the HOLA and the OTS Regulation. To the extent explained below, this Court disagrees.

This Court concludes that the plaintiffs have stated a claim for violation of W.Va. Code § 46A-2-127(d) to the extent that they have alleged that, at the time of each statement claiming a deficiency, they were current under the provisions of the deed of trust *in the absence of any reliance upon* the oral modification agreement or the oral agreement to enter into a repayment plan alleged in Count I. Insofar as such a claim is based in contract, and that abiding by that contract would not more than incidentally affect lending operations, this Court concludes that 12 C.F.R. § 560.2(c)(1) saves the plaintiffs' unfair debt collection claim from preemption. Accordingly, Count IV (Unfair Debt Collection) **MAY**

**PROCEED**.[4]

## CONCLUSION

For the foregoing reasons, this Court concludes that the defendant's Motion to Dismiss **[Doc. 5]**, as redirected toward the plaintiffs' First Amended Complaint **[Doc. 15]**, should be, and hereby is, **GRANTED IN PART** and **DENIED IN PART**. Accordingly, Counts I, II, III, V, and VII are hereby **DISMISSED**, and Count IV **MAY PROCEED** to the extent explained above. Count VI was not the subject of the instant motion.

It is so **ORDERED**.

**DATED:** January 25, 2012.

JOHN PRESTON BAILEY
UNITED STATES DISTRICT JUDGE

---

[4]In so concluding, this Court recognizes that states cannot regulate the terms of the loan agreements entered into by federal savings banks. However, even a federal savings bank must abide by its agreements. When it does not, "[i]t would be surprising for a federal regulation to forbid [a] homeowner's state to give the homeowner a defense based on the mortgagee's breach of contract." ***In re Ocwen Loan Servicing, LLC Mortg. Servicing Litigation***, 491 F.3d 638, 643-644 (7th Cir. 2007).